**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

---

JAMES BROWN 82-C-0099,

                Petitioner,

                                                     **Hon. Hugh B. Scott**
                                                     05CV0839

                v.

                                                      **Decision**
                                                       & 
                                                       **Order**

JAMES CONWAY, Superintendent,
Attica Correctional Facility,
                Respondent.

---

      Before the Court is a petition for habeas corpus relief pursuant to 28 U.S.C. § 2254 filed by James "Pinky" Brown ("Brown").[1] Brown challenges his state court conviction on the following grounds: (1) ineffective assistance of trial counsel; (2) ineffective assistance of appellate counsel; (3) not being present during his *Sandoval* hearing and (4) not being present during the trial court's handling of jury notes before further instructions were given on a fourth note.

## BACKGROUND

  Brown and Lawrence Close ("Close") were charged in connection with the murder of Frank Reiter on August 5, 1980. In connection with that crime, Brown and Close were charged

---

[1] The parties have consented to jurisdiction by the Magistrate Judge pursuant to 28 U.S.C. §636(c). (Docket No. 7).

with four counts of murder in the second degree, robbery in the first degree and burglary in the second degree. Close testified at Brown's trial.

More specifically, on August 5, 1980, the petitioner and Close entered the home of eighty-eight year old Reiter at 705 Sycamore Street in Buffalo. (Vol. 1, Dec. 7, 1981, at 108-109, 318)[2] While Brown and Close attempted to take a television from Reiter's home, Close noticed Reiter looking out from his bedroom. (Vol. 1 at 318-323, 403-409). He told Brown and Brown proceeded to Reiter's bedroom. (Vol. 1 at 409). Close then went into the bedroom and saw the petitioner hitting Reiter in the face, chest and arms with his fists. (Vol. 1 at 324-325, 410). Brown told Close to beat Reiter and to ask Reiter where his money was located. (Vol. 1 at 326, 411, 413). Close did not do as Brown asked. (Vol. 1 at 326, 414). Brown then left the bedroom, came back and again began to beat Reiter with his fists. (Vol. 1 at 326-327, 414, 420-422).

Close told the petitioner to "stop hitting the man because he is an old man." (Vol. 1 at 327). Close then told Brown he was going to leave and made his way towards the door. (Vol. 1 at 327-328). Close testified that he saw Jimmy Coons in the doorway as he left the apartment and went to the front of the house. (Vol. 1 at 327-330). The petitioner and Coons also left. (Vol. 1 at 332). Fifteen or twenty minutes later, Close walked past Reiter's apartment and saw Brown and Coons carrying a television into the backyard. (Vol. 1 at 333). The next day, around one o'clock in the afternoon, Patricia Rhodes returned to her apartment above Reiter's. (Vol. 1 at 108-110). Rhodes noticed Reiter's inside door was partially opened and that the panel closest to the door knob had been kicked out. (Vol. 1 at 116). Rhodes saw Reiter's feet sticking out from

---

[2] Reference denoted "Vol. 1" and "Vol. 2" refer to the volumes of the state trial transcript.

his bedroom door, when she called a friend to come over. (Vol. 1 at 116-119). Together they entered Reiter's apartment and saw Reiter's injuries, at which point they called 911. (Vol. 1 at 119-123).

Reiter suffered a broken nose; semi-circular bruises and other injuries of his chest; burn marks on his right arm, including a burn which went through the skin, subcutaneous tissue and muscle of the forearm; a collapsed lung, pneumonia contracted as a result of his other injuries, and a series of broken ribs (Vol. 2 at 262-264). Reiter died as a result of these injuries. (Vol. 2 at 272).

A jury trial took place from December 7, 1981 to December 17, 1981. The petitioner testified on his own behalf and denied ever knowing or seeing the victim or being involved in any way in the crimes with which he was charged. The petitioner suggested that Close and the other witnesses were motivated to falsely testify against him because they disliked him and wished to exculpate Close. Two defense witnesses gave testimony to undermine Close's credibility, and other witnesses corroborated Close's testimony.

The petitioner was convicted of two counts of Murder in the Second Degree (Penal Law 125.25-3), a class A felony, Robbery in the First Degree (Penal Law 160.15-1), a class B felony and Burglary in the Second Degree (Penal Law 140.25-1(b), a class C felony. The court determined that the brutality of the crime shocked the conscience of the community and the court, and sentenced Brown to an indeterminate term of incarceration of 25 years to life for the felony murder charges, an indeterminate term of 12 ½ to 25 years for the robbery and an indeterminate term of 7 ½ to 15 years for the burglary.

## DISCUSSION[3]

**Exhaustion**

In the interests of comity and in keeping with the requirements of 28 U.S.C. § 2254(b), federal courts will not consider a constitutional challenge that has not first been "fairly presented" to the state courts. [4] *See* Ayala v. Speckard, 89 F. 3d 91 (2d Cir. 1996), citing Picard v Connor, 404 U.S. 27, 275, 92 S.Ct 509, 512, 30 L.Ed 2d 438 (1971); Daye v Attorney General of New York, 696 F. 2d 186, 191 (2d Cir. 1982) (en banc), cert denied, 464 U.S. 1048 (1984).

A state prisoner seeking federal habeas corpus review of his conviction must first exhaust his available state court remedies with respect to issues raised in the federal habeas petition. Rose v Lundy, 455 U.S. 509 (1982) To meet this requirement, the petitioner must have raised the question in a state court challenge to his conviction and put the state appellate court on notice that a federal constitutional claim was at issue. *See* Grady v. Le Ferve, 846 F. 2d 862, 864 (2d Cir. 1988); Petrucelli v. Coombe, 735 F. 2d 684, 688-89 (2d Cir. 1984).

Respondent does not contest the petitioner's exhaustion of state court remedies. Based on the record before the Court, it appears that the petitioner has exhausted his state court remedies and therefore review of the claims asserted in the Petition is appropriate under § 2254(b)(2).

---

[3] The Respondent raises the issue of timeliness. On April 17, 2006, United States District Judge David G. Larimer found the petition was timely on its face and ordered Respondent to provide an answer. (Docket No. 5). Thus, timeliness is no longer an issue in this case.

[4] Section 2254(b) provides the Court with discretion to *deny* (but not to grant) an application for a writ of habeas corpus on the merits notwithstanding the failure of the applicant to exhaust state court remedies.

**Standard of Review**

State court findings of "historical facts," and inferences drawn from those facts, are entitled to a presumption of correctness. Matusiak v. Kelly, 786 F. 2d 536, 543 (2d Cir.), cert. denied, 479 U.S. 805 (1986). (*See also* 28 U.S.C. § 2254(e)(1) which states that, "a determination of a factual issue made by a State court shall be presumed to be correct.") Where the State court has reviewed an issue on the merits, in order for a petitioner to prevail in a federal habeas corpus claim he must show that there was a violation of 28 U.S.C., § 2254(d). As amended by the Antiterrorism and Effective Death Penalty Act of 1996 [5] ("AEDPA"), § 2254(d) provides that a habeas corpus petition may not be granted with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of that claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The habeas corpus petitioner shall have the burden of rebutting the presumption of correctness by clear and convincing evidence. The presumption of correctness attaches to both by state and trial courts and by state appellate courts. Smith v. Sullivan, 1988 WL 156668 (W.D.N.Y 1998) (Larimer, C. J) Nevius v. Sumner, 852 F.2d 463, 469 (9th Cir. 1988), cert denied, 490 U.S. 1059 (1989).

---

[5] Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No.104 -132, 110 Stat. 1214.

As noted in Smith, "the new version of § 2254(d) has clearly raised the bar for habeas petitioners, placing on them the burden to show by clear and convincing evidence that the state court's decision was defective in some way" (Id. at 3).  The statute "requires federal courts 'to give greater deference to the determinations made by state courts than they were required to do under the previous law.'" Ford v Ahitow, 104 F. 3d 926, 936 (7th Cir. 1997) (quoting Emerson v Gramley, 91 F.3d 898, 900 (7th Cir. 1996) cert. denied, 520 U.S. 1122, 117 S.Ct. 1260, 137 L.Ed.2d 339 (1997)); *see also* Houchin v Zavaras, 107 F. 3d 1465, 1470 (10th Cir. 1997) ("AEDPA increases the deference to be paid by the federal courts to the state court's factual findings and legal conclusion").   As stated by the Supreme Court:

> Sec. 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court ... . Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.
>
> Under the "unreasonable application" clause, a federal habeas court may grant a writ if the state identifies the correct governing legal principal from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*See* Williams v. Taylor, 529 U.S. 362, 120 S.Ct. 1495, 1523 (2000)

In order for the petitioner to prevail on claims already adjudicated on the merits, he must show that state courts have violated the federal standards set forth above.

**Not Being Present at *Sandoval* Hearing**

The petitioner seeks habeas corpus relief based upon the fact that he was not present Sandoval[6] hearing. Brown asserts that the ruling allowed the District Attorney to use an attempted burglary charge for which Brown claims he was never arrested nor convicted. (Docket No. 1 at page 8). The respondent argues that the petitioner was apprised of the court's ruling and opted to testify without further comment. (Respondent's Memorandum of Law, 22).

In any event, it was not until 1992 that the New York State Court of Appeals held that a defendant had a *state* right to be present at a Sandoval hearing. O'Connor v. Kuhlman, 2008 WL 687267, at *2 (2d. Cir. 2008). Thus, at the time of the petitioner's trial in 1981, the state law right to be present at a Sandoval hearing was not settled. Moreover, a defendant's right to be present at a pre-trial Sandoval hearing has never been held to be required as a matter of federal constitutional law for purposes of habeas corpus review. As discussed in Alvarado v. Burge, 2006 WL 1840020, at *3 (S.D.N.Y.,2006):

> As his third ground for habeas review, petitioner asserts that his right to due process under the Fourteenth Amendment was violated when his pre-trial *Sandoval* hearing was conducted in his absence. There is a presumption of regularity in judicial proceedings unless a petitioner can show evidence to the contrary. Honeycutt v. Ward, 612 F.2d 36, 41 (2d Cir.1979), *cert. denied,* 446 U.S.1985 (1980)). ***In addition, "a defendant's absence from a Sandoval ... hearing is not a violation of the federal Constitution, and thus does not state a ground for habeas relief ....[W]hile a defendant has an absolute right under New York law to be present at [a] Sandoval ... [hearing], that right does not derive from federal constitutional principles.***" Jones v. Artuz, 2004 WL 628881(E.D .N.Y. 2002), *aff'd,* 96 Fed. Appx. 742 (2d Cir.2004), *cert. denied,* 543 U.S. 856 (2004); *see also* Williams v. McCoy, 7 F.Supp.2d 214, 220 (E.D.N.Y.1998).

---

[6]   People v. Sandoval, 34 N.Y.2d 371 (1974).

Thus, Brown's absence from his *Sandoval* hearing does not state a ground for habeas relief.

**Not Being Present for Notes From Jury**

The petitioner also alleges that his constitutional rights were violated because he was not present during the trial court's handling of three jury notes before further instructions were given on a fourth note.  A defendant's constitutional right to be present, which is rooted in the Confrontation Clause of the Sixth Amendment and in the Due Process Clause, "requires a criminal defendant's presence 'to the extent that a fair and just hearing would be thwarted by his absence, and to that extent only.' " United States v. Jones, 381 F.3d 114, 121 (2d Cir.2004), quoting Snyder v. Massachusetts, 291 U.S. 97, 108 (1934) (Cardozo, J.). A defendant thus has the right to be present at any proceeding where "his presence has a relation, reasonably substantial, to the fullness of his opportunity to defend against the charge." Snyder, 291 U.S. at 105-06. A defendant has no right to be present, however, "where the proceeding at issue involves only questions of law or procedure," People v. Rodriguez, 85 N.Y.2d 586, 591 (1995), because in such proceedings, the defendant has no "peculiar factual knowledge" that would allow him to make a material contribution, People v. Dickerson, 87 N.Y.2d 914, 915 (1996); *see Snyder,* 291 U.S. at 106-07 (noting that defendant has no right to be present where his "presence would be useless, or the benefit but a shadow").  The Second Circuit has held that a defendant's right to be present at trial is not violated when the defendant is absent when exhibits previously received in evidence are displayed to the jury, Monroe v. Kuhlman, 433 F.3d 236, 246-47 (2d Cir.2006), or when a transcript of testimony is sent to the jury room during deliberations, United States v.

Schor, 418 F.2d 26, 31 (2d Cir.1969). Indeed, that Court has also held that a defendant has no due process right to be present during the charge conference at which the substance of the instructions to be given to the jury is discussed and decided. <u>United States v. Rivera</u>, 22 F.3d 430, 438-39 (2d Cir.1994). Thus, in <u>Salley v. Graham</u>, 2008 WL 818691, at*4 (S.D.N.Y.,2008), the Court held that the petitioner's absence when the Court responded to notes from the jury was not of constitutional dimension. Similarly, in <u>Yonamine v. Artuz,</u> 2000 WL 1593300, at *1 (2d. Cir. 2000), the defendant argued that his due process rights were violated because he was not present at the exchange concerning the jury note between the trial judge and his attorney. The Court held that there is no clearly established Federal law, as determined by the Supreme Court of the United States, that guarantees a defendant the right of presence at a chambers conference between the trial judge and counsel at which legal issues are discussed.

In light of the above, the petitioner is not entitled to habeas corpus relief based upon this claim.

**Ineffective Assistance of Counsel**

Brown seeks habeas corpus relief based upon the claims that he was provided ineffective assistance of trial counsel and also ineffective assistance of appellate counsel. Both claims were reviewed and denied on the merits in state court.

Ineffective Assistance of Trial Counsel

The claims upon which the instant petition are based were raised by Brown on direct appeal, in his CPL 440.10 motions and in his state court Writs of Error *Coram Nobis*. In each

instance, the petitioner suggested that proof of his guilt was insufficient and that "but for" counsel's overwhelming ineffectiveness, the outcome of the petitioner's case would have been different.

The petitioner's claim of ineffective assistance must be analyzed according to the standards set forth by the Supreme Court in Strickland v. Washington, 466 U.S. 668 (1984). In Strickland, the Court stated that the test for an ineffective assistance claim in a habeas corpus case is whether the petitioner received "reasonably competent assistance." Strickland, 466 U.S. at 688. In deciding this question, the court must apply an objective standard of reasonableness under prevailing professional norms. Id. Generally, defense counsel are "strongly presumed to have rendered adequate assistance ..." Strickland, at 690. To succeed on such a claim, then, the petitioner must "overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.' " Strickland, at 689 (quoting Michel v. Louisiana, 350 U.S. 91, 101 (1955)). If defense counsel's performance is found to have been defective, relief may only be granted where it is shown that the defense was actually prejudiced by counsel's errors. Strickland, supra, 466 U.S. at 692. Prejudice is established upon a showing that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. The court determines the presence or absence of prejudice by considering the totality of the trial evidence. Id. at 695.

### Right to Testify Before the Grand Jury.

The petitioner claims that he had ineffective assistance of trial counsel because he was denied his constitutional right to testify before the grand jury. (Petition for Writ of Habeas

Corpus ("Petition"), Ground One).  The petitioner asserts that trial counsel failed to communicate with him before trial counsel waived his right to appear before the grand jury and concealed this waiver from the petitioner.  There is no federal constitutional right to a grand jury in a state criminal prosecution.  <u>Fields v. Soloff</u>, 920 F.2d 114, 1118 (2d Cir. 1990).[7]  Because the right to testify before the grand jury is a right granted exclusively by state law, this claim is not cognizable on federal habeas review.  <u>Patterson v. Poole</u>, 2004 WL 1874967 (S.D.N.Y. 2004); see also <u>Green v. Artuz</u>, 990 F.Supp. 267, 273 n. 8 (S.D.N.Y. 1998) ("[The] right to testify before a grand jury is a purely statutory right, and does not rise to a [c]onstitutional level.")

Furthermore, Brown's claim fails on the merits because errors in grand jury proceedings are deemed harmless once a petit jury returns a guilty verdict.  <u>United States v. Mechanik</u>, 475 U.S. 66, 73 (1986).  Brown was convicted after a jury trial, and this conviction thereby cures any alleged defect in the indictment.

<u>Counsel Failed to File a Notice of Alibi and Failed to Contact or Call an Alibi Witnesses or Eye Witnesses</u>

The petitioner claims that he had ineffective assistance of trial counsel because of trial counsel's failure to file a notice of alibi and failure to contact or call alibi witnesses.  Similarly, the petitioner claims that two eyewitnesses came forward and contacted counsel regarding testifying for the defense, and that counsel failed to interview and call these eyewitnesses at trial.

---

[7]  Additionally, the duty of the grand jury is limited to determining whether there is adequate evidence to sustain a criminal charge; there exists no requirement for the prosecution to present, or the grand jury to hear, any additional evidence beyond that needed to convince the investigating body that an indictment should issue.  <u>United States v. Williams</u>, 504 U.S. 36, 51-55, 118 L. Ed. 2d 352, 112 S. Ct. 1735 (1992).

Nowhere in his petition or the supporting memoranda does the petitioner identify who these alibi witnesses or eye witnesses were, or the circumstances of the alleged alibi. Further, the petitioner fails to state how any testimony from these witnesses would rebut the testimony of Close, Ella Marie Chapman,[8] and Alveetezann Frailey[9] or changed the outcome of the trial. In any event, the Second Circuit has held that "the decision to call or bypass particular witnesses is peculiarly a question of trial strategy, United States v. Matalon, 445 F.2d 1215, 1219 (2d Cir.), *cert. denied,* 404 U.S. 853 (1971), which courts will practically never second-guess." United States ex rel. Walker v. Henderson, 492 F.2d 1311, 1314 (2d Cir.1974). "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." Horne v. Perlman, 433 F. Supp. 2d 292, 302 (W.D.N.Y. 2006); see also Millio v. Barkley, 48 F.Supp.2d 259, 266 -267 (W.D.N.Y.,1999)(even if petitioner had informed counsel of potential alibi witnesses, failure to raise such a claim does not rise to the level of a constitutional violation because the decision to pursue a particular defense, or to call a particular witness, is a tactical decision to be made by counsel). In the instant case, inasmuch as the purported alibi witnesses have not been identified, the petitioner has not established any basis to conclude that the failure to file a notice of alibi or to contact these witnesses was unreasonable.

---

[8] Chapman testified that subsequent to the incident on August 5, 1980, Brown admitted to her that he "burglarized or robbed" Reiter, but that Brown did not "do any actual beating or killing." (Vol. 1 at 495).

[9] Frailey testified that prior to the time Reiter was murdered, she overheard Brown tell her boyfriend: "Let's go across the street to the old man's house" referring to Reiter's house. (Vol. 1 at 541). She testified that Brown took a green plastic bag she used for clothing. When she asked him why he took it, he told her he had a TV to put in it. Further, she testified that when she asked where he got the TV, Brown stated: "across the street from the old man house." (Vol. 1 at 544).

### Counsel Failed to Move for Dismissal of Indictment

The petitioner also claims that his counsel was ineffective because counsel failed to move for dismissal of the indictment. Once again, the petitioner has failed to articulate a basis upon which a successful motion to dismiss would be based. Thus, he also has failed to show that there is a reasonable probability that, but for the deficiency, the outcome of the proceeding would have been different. Strickland, at 694 (quoting Michel v. Louisiana, 350 U.S. 91, 101 (1955)).

### Cumulative Effect of Issues

Considered independently or cumulatively, the petitioner's allegations are insufficient to sustain a claim of ineffective assistance of trial counsel. Based upon the record in this case, the state court determination that Brown was not denied effective assistance of trial counsel was not contrary to established federal law or an unreasonable application of the facts. The petitioner's request for habeas corpus relief on this ground is denied.

**Ineffective Assistance of Appellate Counsel**

The petitioner also claims that he received ineffective assistance of appellate counsel because counsel failed to raise various issues that he wanted raised on appeal. (Petition, Ground Two). A claim of ineffective assistance of appellate counsel is reviewed using the same Strickland standard as is used in a claim of ineffective assistance of trial counsel. An appellate attorney need not raise every non-frivolous legal argument on appeal which the trial record supports. *See* Evitts v. Lucey, 469 U.S. 387 (1985); Jones v. Barnes, 463 U.S. 745 (1983). "When a convicted defendant complains of ineffectiveness of counsel's assistance, the defendant

13

must show that counsel's representation fell below an objective standard of reasonableness". Strickland, 466 U.S. at 687-688. "Judicial scrutiny of counsel's performance must be highly differential. Because of the difficulties in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance..." Id. at 689.

Brown asserts that appellate counsel was ineffective primarily in failing to adequately raise the issue that he was denied effective assistance of trial counsel. In this regard, the petitioner reasserts the rejected arguments advanced in support of his direct claim of ineffective assistance by trial counsel. Because the Court finds that these claims do not support a finding of ineffective assistance of trial counsel, appellate counsel's failure to raise these issues cannot form the basis of an ineffective appellate counsel claim. In addition, the petitioner alleges that appellate counsel failed to raise as an issue on appeal, the fact that he was not present at the Sandoval[10] hearing held prior to his trial. As discussed above, the petitioner does not have a federal constitutional right to be present at the Sandoval hearing. Moreover, at the time of the petitioner's 1981 trial, the petitioner did not even have a state law right to be present at the Sandoval hearing. Thus, appellate counsel's failure to raise this claim on appeal cannot serve as a basis to find ineffective representation. O'Connor v. Kuhlman, 2008 WL 687267, at *2 (a reasonably competent attorney would be excused for not pressing this argument in 1988, as the New York State Court of Appeals decision setting forth a defendant's right to be present at a *Sandoval* hearing ... was issued in 1992).

Thus, the petitioner's request for habeas corpus relief on this ground is denied.

---

[10] People v. Sandoval, 34 N.Y.2d 371 (1974).

## CONCLUSION

Based on the above, the petition for habeas corpus relief is **DENIED** in its entirety.

The Court also finds that no certificate of appealability should issue inasmuch as the petitioner has not made a substantial showing of the denial of a constitutional right. *See,* 28 U.S.C. § 2253(c)(2) (Providing, in relevant part, that "[a] certificate of appealability may issue ... only if the applicant has made a substantial showing of the denial of a constitutional right."); *see also* Miller-El v. Cockrell*,* 123 S.Ct. 1029, 1039-1042 (2003) ("Under the controlling standard, a petitioner must show that reasonable jurists could debate whether (or for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further.") (citation and internal quotation marks omitted).

So Ordered.

/s/ Hugh B. Scott
United States Magistrate Judge
Western District of New York

Buffalo, New York
March 9, 2009